Andrews v. United States. Thank you. Thanks. I misread that. I'm sorry. I'm looking at the motions calendar. So United States v. Dagar. We've got Ms. Johnson. You've reserved two minutes for rebuttal. So the floor is yours. You may proceed. Good morning. May it please the court. My name is Selby Jason, and I represent Defendant Appellant Amit Dagar. I also represented Mr. Dagar in the district court below. I'd like to begin with our second issue this morning, venue. The evidence in this case is completely different than any other securities fraud venue case before this court. Mr. Dagar was an unsophisticated retail trader who placed his trades outside of the Southern District through a broker located outside of the Southern District and in connection with an alleged co-conspirator located outside of the Southern District. The execution of the trades by the exchange occurred exclusively outside of the Southern District on the exchange's servers in New Jersey. The government's witnesses at trial, including their expert Peter Melle of FINRA, testified that the NASDAQ exchange maintains their servers in New Jersey and that the execution of the trades in this case and the acts related to the execution of the trade occurred on those servers. There was no evidence in this case of any act actually occurring at the NASDAQ corporate headquarters in the Southern District. Well, there was evidence that the trades were cleared in the Southern District of New York, right? What about that? Um, the sellers that were matched by the exchange to Mr. Dagar's buy orders, they had clearing firms. Uh, there were two clearing firms that had maintained addresses in the Southern District. Um, those, the services provided by the clearing firms, uh, are, there was testimony to this ministerial services and record keeping functions, um, which happened after the execution. I mean, it might be ministerial because you're going to clear, uh, a transaction in every transaction, but that means it's an inherent part of a transaction. So if you engage in a transaction that's cleared in New York, like you, like that's something that you're doing in New York, right? The clearing happened by the seller side of the firm. Um, and the, the, really the second, um, part of the venue analysis in this circuit is a foreseeability requirement. And here an unsophisticated trader like Mr. Dagar, um, whether or not an act- There are two different requirements, right? So you either knowingly do something that happens in the Southern District or something happens in the Southern District that you didn't, maybe didn't intend, but it was foreseeable. But here he knowingly did the trade, right? Well, the government sets forth in their brief that a general intent to trade is sufficient to establish venue. Um, and we think that that's wrong and easily rejected based on this court's jurisprudence as to venue. But are you suggesting that, uh, Mr. Dagar didn't understand where the servers were or are you saying he didn't understand, uh, that the, the trades, the transaction would take place on NASDAQ? Either, Your Honor. I don't think he understood any of it. So there- It wasn't foreseeable to him? I mean, the record shows he, he had made more than 7,000 trades, right? He described himself as experienced, uh, as an extensive trader, uh, and he knew that the brokerage firm was a member of the New York Stock Exchange. Uh, sure, Your Honor. So a few points on that. Uh, the volume of the defendant's trading, I don't think is relevant to whether he understood the process of the trades or where those trades were happening. Um, he- But where, I mean, where, what the exchange was or where the servers were? You're, you're, I mean, we're really focused just on- Either, Your Honor. So-  I mean, there's no evidence in the record here that he would have understood where the NASDAQ, uh, even headquarters, where no act occurred related to the trade. The, the execution was purely on their servers in, in New Jersey, and the, and that was clear undisputed testimony. Um- But you, you're saying construing the evidence most favorably of the government that it could not be inferred by a preponderance of the evidence that he could reasonably foresee that the exchange would be located in New York? Is that what you're, you're suggesting? Yes, Your Honor. I, I don't think it's a, a reasonable inference that any act occurred at the headquarters related to the trade. But we, we've said over and over again, you know, I was on the panel in, in Chao, and it wasn't the first time we said it, that when, when the defendant's charged with a defense involving the trading of securities on a stock exchange located in the Southern District, venue in that district is appropriate. Um, and we've said it, uh, in Savota, in Gabel, in Riley in a summary order, and most recently in, in Byer in a summary order. So how do you get around that? You may disagree with that. Um, and you know, I know you cited the back and forth of the oral argument on Byer, but that's certainly not the law. Well, how do you get around that? Sure. So- In addition, you have the clearing occurring, um, and which we have also said in Savota, we approved the jury instruction that said execution or settlement of a securities trade within this district is sufficient. So we approved an instruction that said settlement of a securities trade within the district is sufficient. So you have both of those things. You have the location of the exchange in New York, and you have a settlement of the trade in the district. So I think that the main difference with this case and every other case, a securities fraud venue case in this court, is that the execution of the trade in this case purely happened on the exchange of servers in New Jersey, both Peter Melle, the FINRA expert, as well as- But why isn't the settlement enough? I just read you the instruction from Savota, which says the execution or settlement of the trade. We have the settlement of the trade in the Southern District, right? Yes. Yes, Your Honor. For the seller side of the trade-  Why should it matter? Um, well, um, Mr. Dogger, when he placed his trade, uh, would not have been able to know who the sellers were or where their settlement service, services were being provided. Oh, well- In all these cases, we've never done an analysis that the defendant knew where the settlement would be, right? That's not part of analysis in any of the cases I cited, is it? Um, no, Your Honor. I believe you're correct on that, but, um, the reasonable foreseeability aspect, whether a settlement and clearing, whether, you know, we don't agree and don't concede that that happened in New York, but- But you're sort of saying we should interpret it knowingly to mean he knew that the thing was going to happen in New York. I'm not sure that's right, if you knowingly do something and it happens in the Southern District. But, like, even accepting that view, if you're trading on a New York exchange, isn't it at least foreseeable that you're going to be matched with a seller that's in New York? Um, I do want to discuss more specifically the general template, but to get to the exchange point that you just made, so Mr. Dogger's trades were in options. They were not in stock. So, in all of the other venue cases as well, those were stock trades, and I think that that is a difference here. Why does that make a difference? Um, so- It's still a security you're buying from a seller, isn't it? Uh, yes. The stock options that Mr. Dogger purchased traded on, you know, there were various exchanges in the record, and it just so happened that these ones were routed to NASDAQ, and Mr. Dogger had no role in where those were routed and whether, what seller they were matched with. So, you're saying he just wanted options, and so he didn't care where they came from, and like the computer just routed him somewhere. Yes, he placed his trade from New Jersey. He, again, unsophisticated investor, and while he placed a lot of trades, he wouldn't- And you're saying, so he had to have knowingly known that he was buying something from New York, which he didn't, and it's not even foreseeable that the purchase would have been from a seller in New York? Yes, Your Honor. This, this court's cases are clear that there must be some sense of venue having been freely chosen by the defendant. That's in both United States v. Davis and then repeated again in United States v. Tang Uke, and really that stems from the constitutional protection of the Sixth Amendment. But the jury instruction here, which wasn't objected to, right, there was no objection to the jury instruction on venue, was there? There was, Your Honor. There was back and forth with the court on that, and we objected. Well, I mean, the instruction was venue is proper in a district where the defendant intentionally or knowingly causes an act in furtherance of the charge, the charged offense to occur, or it is foreseeable that such an act would occur. You're saying you object to both aspects of that instruction? No, no, Your Honor. That's the rule from subobita. I thought you were referring to the general, there's other portions of the venue instruction we don't object to. And the portion is you don't think that you, you, it's enough if you intend the act to occur, and the act occurred in the southern district, you think you need to have the specific intent that the act occur in the southern district? Yes, Your Honor. I think that that's very clear from this court's cases on venue, outside of even the Sixth  But that changes the instruction in subobita to changing the or to an and, it seems to me. If the instruction says it's either of those two, you're going to be suggesting no, no, it still has to be foreseeable in any event. Yes. I mean, I think the standard in the Second Circuit is a reasonable foreseeability standard. I think that knowledge and intent, as a higher standard, would meet a reasonable foreseeability standard. But there needs to be some way that the defendant knew that an act would occur here. And again, that's Davis and other cases. So the knowledge thing is actually kind of gratuitous. You could just, as long as it's foreseeable, because as you said, knowledge and intent would meet the foreseeability standard. We could just say there's venue if you do something and it's foreseeable that it will be in the southern district. Yes, but I think... We didn't need to say the thing about knowingly do the act. It's your... Yes, Your Honor. I think that that's correct. Isn't it the first prong deals with if the person does something themselves, whether they knowingly cause something to affirmatively happen in New York. That's prong one. Prong two is if somebody else does something in New York, whether it's reasonably foreseeable to them, given the scope of all the conduct, that they would have known that someone else would have done something in New York. Isn't that the way it works? Yes, I think you could think of it that way. Just a bit of a background, if I may, on that rule. I know I'm a little bit over time here. But the subobita that comes from two court decisions, Ves Malinovic, which is a district court case, which found that purely ministerial functions that are unintended and unforeseeable to the defendant are insufficient to establish venue. And that was part of the jury instruction in our case here. The second part of that comes from United States versus Kim. And in that case, the court found that the defendant, because he was in a foreign country, but knew that invoices were being paid by a bank in New York. And the court there in Kim specifies he knew they were being paid by the bank in New York, so that act was happening in New York. That's the knowledge or intent. So he knew that that was happening. And then on just the reasonable foreseeability point, the securities fraud venue cases in this circuit, the foreseeability is based on their background and education. They either are very high-level executives at the company and are aware of where the stock trades, that it trades on NASDAQ. So in all those cases, they were high-level, whether a chief information officer or some other high-level involved in the M&A of the company, or they had business and education experience in... So you're saying because your client didn't know that the security was trading on NASDAQ, there's no venue? But if he had known that, there would be venue? Yes, Your Honor. I think there would be an inference of reasonable foreseeability for Mr. Dogger if there was evidence in the record, like there are in other cases before this court, of actual notice. So both in Svoboda and Geibel, there's evidence that the defendant received trade confirmations, received or sent letters to the exchange about the trades that he made. Here there is nothing in the record about that. All right. Well, you reserve two minutes for rebuttal. So we'll now hear from Mr. Rodriguez. Good morning, and may it please the court. My name is Justin Rodriguez, and I represent the United States on this appeal, as I did before the district court. It didn't come up in the appellant's argument, but the government will rest on its brief with respect to the constructive amendment argument. I will just add that Judge Sullivan, a few weeks ago on April 28th, in the United States versus Zhang case, writing for the court, you described the difficulty of prevailing on a constructive amendment claim, and how rigorous the standards are for establishing it. And I believe that Mr. Doggar has not met those standards here. Well, thank you, Mr. Rodriguez. It's nice to know that people read these things. With great interest, Your Honor. Turning to venue. So I think Judge Bianco framed this correctly, which is to say that this court must assess the evidence, the sufficiency of the venue evidence, like all other evidence, and it must do so in the light most favorable to the government and draw all inferences in the government's favor. And here a rational jury could have found by a preponderance of the evidence that venue was proper on any of three independent grounds. So I'll turn to the first ground, which is that trades took place. I know it's not really an issue here, but is it a jury question? Yes, Your Honor. I mean, it's submitted to the jury, I guess, but it's not really an element of the crime. I just was wondering if you thought that it had to be. So it's interesting, Your Honor. So I agree. It's not an element of the crime, but the jury was instructed on each of these issues. Not only was the jury instructed that they had to find an act in furtherance of the crime, but at Mr. Degar's request, they were also instructed on what we'll call the state of mind aspect of the venue issue. So they were instructed and therefore had to agree with the government that either acts were knowingly and intentionally caused by Mr. Degar that happened in this district or that they were reasonably foreseeable, as well as they were also instructed that purely ministerial acts would not suffice to establish venue. So I think all of the venue issues before the court are jury determinations that are owed the appropriate deference. With respect to- I just want to stop you there on that, because my understanding, there has to be some level of knowledge, whether it's actual knowledge that you caused something to happen in New York or a reasonably foreseeable, through seasonability. This idea that you can commit some act anywhere in the United States and with no evidence of any knowledge whatsoever that it's going to have any touch on the Southern District of New York, that you could still have venue. I don't think we've ever said that in Smurvota and as opposing counsel noted in Kim. In both of those, we did a knowledge analysis where the person made the trade themselves. So you had a person making a trade and we still said, it's a savvy investor. They would have reasonably foreseen that it would touch on New York. So what's the government's position on that? I know they were instructed about that knowledge. Isn't that what the law is, that there has to be some level of knowledge or reasonable foreseeability? So, yes, Your Honor. Either the defendant has to knowingly and intentionally cause an act, which happens in the Southern District of New York, or- But if he just causes the act, but has no idea that it could possibly ever end up in the Southern District of New York, we never said that's enough. Well, I think this court's case in Royer establishes that, where the defendant caused- Why in Smurvota would we have said, there's nothing in the right to indicate that Robles intended the trades in question to be executed either on the New York Stock Exchange or the Amex Exchange? And then we go on to say, however, the fact that he was a savvy investor meant he could reasonably foresee that his trades would be likely executed on either of those two exchanges. We clearly believed that, even though he was the one who intended the trades, that he had to have some level of knowledge that was going to touch on New York, right? Understood, Your Honor. But I think this court's case in Royer post-states Smurvota by about five years. And there, I think the court was clear that it was sufficient that the defendant caused information to be transmitted to the Eastern District of New York, even though he didn't know that he had subscribers in the Eastern District of New York. But I think, to get back to the court's earlier point, only one of the two is sufficient or has to be sufficient. Either that there was reasonable foreseeability or knowing an intentional causation. And here, and I think that this is the prong that Judge Carter relied on, the government easily cleared the reasonable foreseeability standard in multiple ways. Number one, I think it is reasonably foreseeable that when you buy a sophisticated financial product, like a call option, you may be buying it from a sophisticated financial institution like Hudson River Trading or HRT, which is located here in the financial capital of the world. Similarly, it's reasonably foreseeable when you buy such a sophisticated financial product that Wall Street firms here in the financial capital of the world, like Goldman Sachs, like Bank of America, will be involved in processing and completing those trades here in the financial capital of the world. So I think the government, again, looking at the evidence most favorably for the government, is able to satisfy both of those standards. But certainly if the court- Just in the two examples you just gave, where the seller and the clearing service, but you didn't mention the headquarters of the NASDAQ. So do you think that the headquarters of the NASDAQ does not independently establish venue? I believe it does, Your Honor, based on this court's precedent as- I mean, we do say in all of these cases that the headquarters of the exchange supports venue. We like just throw in that line or something, although usually there's other stuff also that supports venue. Why would the headquarters of the NASDAQ support venue if we have evidence that all of the mechanics of the trade occurred outside of New York? So well, first of all, Your Honor, the trade here is not completed until it is cleared and settled. And that happens indisputably in the Southern District of New York. No, I get it. So there's other reasons why it would have been. But I'm curious about this headquarters question. Yes, Your Honor. So I think what's important to keep in mind here is it is only by a preponderance of the evidence and it is only, or it can be proven by circumstantial evidence. So I think what this court's case law permits is, again, it's a jury finding. And here the jury was also instructed that if you find that the trade took place on an exchange located in the district, you can find venue. It's a question for the jury as to what location means. And the jury is permitted to infer that something happened. And I don't think they're obligated to determine what it was, but something happened in the exchange that's located. So the headquarters, one of those things? I think based on this court's case law, yes. So why? Why is that part of the crime, the corporate headquarters of the exchange? So if the defendant introduces, shows the evidence that the actual transaction occurred in New Jersey, why does it matter that the corporate headquarters of the exchange was in New York? Because the trade is not completed based on the New Jersey action. What is true in this case, what was true in the case involving former Congressman Steve Booyer, is that the execution, which is step one of three, took place in New Jersey. So that case involved computer servers in New Jersey as well, which is the same argument that's being made here. But the clearing and settling involved actions that took place in this district. No, I get it. And so here you have evidence that the clearing took place in New York. But that just doesn't, that's not about the corporate headquarters of the NASDAQ. That's a separate question. So like my question is just like in principle, if all you had was the corporate headquarters of the NASDAQ is located in New York, but all of the mechanics of executing the trade occurred somewhere else, would venue still be proper? I would say under the current state of this court's law, yes, your honor. And why would that be? That's my question. Well, I think because this court has gone out of its way to call it, quote, the established law of this circuit. And I think Judge Bianco read the holding in Chao is it's quite categorical. Why that makes sense comes back to my earlier point, which is a recognition of just how much latitude the jury has to make a finding. So maybe what it does is it creates a presumption that if the jury hears that the exchange is located in New York, they might be able to reasonably infer that some execution of the trade occurred in New York. But I suppose if there's also evidence introduced about all of the steps of the trade and shows that it didn't occur in New York, it might overcome that presumption. I think that's actually correct, your honor. And do you really? Because, I mean, Chao, there was no evidence as to where any servers were. And here there seems to be evidence that there were servers outside of New York that the server servers in New Jersey and servers elsewhere. So I believe the record in Chao was that Peter Mellie, who is the same witness who testified here when he was asked if he knew where the computer servers for Nasdaq were. I think in Chao, his answer was something like, I don't know. Or it was uncertain. Right. It seemed like the court in Chao didn't seem to think that mattered very much. That's correct, your honor. I think what the court in Chao said is regardless of where these trades were executed or initiated, they were still nonetheless cleared and settled in this district. And I think it's also of note that Chao also involved clearing and settling by the sellers firm. This is a distinction that Mr. Dugar has made several times as if it were dispositive. But the same was true in Chao, which is it was the sellers clearing and settling in New York. I have a question about that. But just one last thing on this headquarters thing. I mean, might it be that sometimes often when you buy on an exchange, you're entering into a transaction with the exchange and the exchange enters into a transaction with the other with the seller. And so like it kind of acts as an intermediary. And so maybe you are kind of transacting with a party in New York if the if the exchange is located in New York. Might that be? I mean, we haven't explained that, but that might be a reason why we think that the the corporate headquarters matters, because it's like where the counterpart, the formal counterparty is located. So I think that's right. And I think the evidence at trial was that the exchange is providing a matching service, right? It's matching buyer and seller. And it just so happens to be that one of the computer, the server that's doing the the matching is in New Jersey. But the party itself, the exchange is in New York. And you say it just so happens. But that could be very important if all of the activity that constitutes the crime is happening in New Jersey. Understood. Your Honor. Yes. No, I didn't mean to minimize it in that way. But the argument you're making is that even though the activity is happening in New Jersey, the entity that's doing it is like kind of a citizen of New York because its principal place of business is in New York. I think that's right, Your Honor. And again, the location of the exchange was a litigated question before the jury. The defense made its arguments about the location of the exchange here. The government made its arguments and the jury obviously reached the verdict that it reached. Right. But whether that is appropriate might depend on the reason why the location matters. So you're saying, well, it might be that we just kind of say, well, the headquarters was in New York. So the jury can presume that some activities happened in New York. Well, if there's other evidence about where everything happened, then they can't make that presumption. If it if there if it always matters that the exchange is in New York just because that's the counterparty or whatever, then maybe it doesn't matter what other evidence like I'm trying to evaluate the reason for why we've said in prior cases that the headquarters matters and it seems like you have sort of different rationales, but they're not quite sure what the what the primary one is. I think that's fair, Your Honor. I mean, I'm just based on reading sort of the categorical statement of the rule in Chao. It's it's quite categorical. But I think as to why it matters, it the court was was not as as as categorical. All of this, of course, I think is only with respect to one of three independent. All right. So then the clearing question. So that happened in New York. And so why isn't that a ministerial function? Well, the test is whether it is a purely ministerial function. And here it is not a purely ministerial function. I think the witnesses conceded that there may be ministerial aspects. But here there were three witnesses who testified, including one of the same witnesses who testified in Chao, that there you cannot have trades. You cannot have completed options, trades or equities trades, for that matter, unless all three steps are are done execution, clearing and settling. And this court has acknowledged that in Chao. It just recently reaffirmed that in in the Steve Booyer case that the crime is not completed. It continues through and is only completed upon clearing and settling. But why does that make it not ministerial if it's something that just happens all the time? Well, again, it's OK for it to have ministerial aspects. The test under this is purely is part of every trade. Why does that mean? What's the non ministerial aspect that you're identifying? Well, ministerial, I would think of as unnecessary here. It's necessary. You can't have a trade unless there is execution, clearing and settling. The trade is not complete. The crime is not complete until all of those things happen. This is also an issue that the jury was instructed on and ultimately sided with the government on. They were instructed. If it's a purely ministerial aspect, that that's not sufficient to find venue. So this is just another fact that I think is entitled to deference by this court based on ministerial means that it's unnecessary, like it wouldn't like it could just be excluded and everything else would be fine. And that makes it not ministerial. I think that's right, Your Honor. I mean, here it is. It is a it is anything that is absolutely necessary in this regard to the completion of the crime. I think it cannot be characterized as purely ministerial. An example of something that I think would be purely ministerial that the government could not rely on is after all of these trades were done, they're executed, they're cleared, they're settled. Fast forward three months. It's the end of the quarter. And the clearing firm sends you an account statement and says, hey, here's what your trading activity was for the past quarter. The fact that that account statement was issued from the Southern District of New York, I would categorize that as something purely ministerial that happens after the crime is completed and would not be sufficient. If there were a statute that said that every clearing firm must send a notice like that, so then it's a necessary part of every trade. Would that make it a necessary part of the transaction? I don't think so, because I think the analysis would be when is the crime completed? And here is this court has acknowledged again in Chau, among other cases, the crime is completed upon settlement. All three of the steps, execution, clearing and settlement have to take place. All right. Thank you, Mr. Rodriguez. Thank you, Your Honor. We'll now hear from Ms. Jason for two minutes of rebuttal. Thank you. Two points on my colleague's argument. First, Judge Menasche, I think you hit on an interesting point about how the exchange acts as a counterparty to both sides of the trade. There was evidence in the record from one of the employees employed by the relevant clearing firms in this case that the options clearing corporation is the buyer to each seller and the seller to each buyer. So acts as that counterparty to both sides of the trade. So you're saying this was not a trade in which the exchange was the counterparty? Right. It would have been the OCC. And that's... That doesn't help you very much because the clearing firm is in New York, right? No, there was no evidence in the record as to where the OCC is located. That was not in the record. The clearing itself happened in New York, but the clearing... So that's where the distinguishing factor of the seller is clearing firm. So the way it works is that there's the OCC that does sort of this clearing function for the clearing and settling on the exchange, and then the seller's head is its own clearing firm.  So the OCC works for the NASDAQ? Yes. Yeah. Yes. Right. So then why... So then just going back to Mr. Rodriguez's point, if the NASDAQ is based in New York and the NASDAQ's agent, maybe not the NASDAQ itself, is the counterparty to all of the Why doesn't that mean that you're engaging in a transaction with a New York entity and that is, you know, reaching out to New York? Well, there was no evidence in the record where the OCC is or where it maintains its servers. And I will note in Chao, which pointed to the... Did discuss the clearing of the firm, the portion of that clearing occurred. They talk about the deposit and... Or Depository Trust and Clearing Corporation. And there was evidence in that record that that server, which would have been the equivalent in the options context to the OCC, that was located in New York. And again, there was no evidence of the OCC here. And then in terms of clearing being a purely ministerial act, as you know, I do think there's a distinction between ministerial and necessary. We cite the definition from Black's Law Dictionary in our brief of ministerial, and that is something that is automatic. It's something that happens whether or not a human touches it. And there was also from a clearing firm employee who testified in this case evidence that when the trade came into the clearing firm for the seller, it was not touched by a human being. So that, to me, is ministerial. That is purely ministerial. So there has to be a kind of voluntary act that touches the Southern District? Yes. So all of the mechanics of the trade don't matter because that follows automatically from the decision to make the trade? Right. The execution of the trade is the act in this case. So doesn't it mean that in all of these prior cases where we talk about how all the different steps of the trade and where they occurred and we look at that to support venue, those would be wrongly decided if it were true that that was all ministerial and didn't count for venue? This case is unique in that the jury instruction specifically said that purely ministerial functions that are unintended and unforeseeable by the defendant are insufficient to establish venue. Why does that make it unique? You're saying that's what the standard is in all cases, right? Yes, we would take that position, but the jury instructions in other cases have not been as fair. You're just saying that this aspect of the standard for venue has been overlooked until now and here the jury was properly instructed, but it didn't meet the standard that was in the jury instructions? I'm not sure it's been overlooked, but I do think in all of those other cases, another very important distinguishing factor is the defendant's personal state of mind as to how trading works, how that all three aspects of the trade or of the process occur. Well, that's a different question as to whether it's a ministerial function, but I take I understand your argument on that point too. Yes. All right. Thank you, Ms. Jason. Thank you both. We'll reserve decision. I'm sure.